The next case is Melody Cunningham et al. v. Lyft, Inc. et al. Appeal numbers 201373, 201379, 201544, 201549, and 201567. Attorney Goldenberg, please introduce yourself for the record and proceed with your argument. May it please the Court, Elaine Goldenberg on behalf of the Lyft defendants. I'd like to reserve two minutes of my time for rebuttal if I could. And I'd like to... Yes, you may. Thank you, Your Honor. I'd like to start with the question of whether arbitration must be compelled here and then move on to the issues relating to the preliminary injunction motions. Three critical points support the conclusion that the Section 1 exemption does not apply here. First, numerous early 20th century Supreme Court decisions, including decisions that predate the 1925 enactment of the FAA and of which Congress would have been aware when enacting Section 1, draw a sharp distinction between a local journey that's part of an integrated interstate trip, which is in the flow of interstate commerce, and a local journey with no contractual or necessary relationship to interstate travel that merely arrives at or departs from a place where interstate travel might occur, which is not in the flow of interstate commerce. And this distinction... That's the test you would advocate we use in the flow of commerce? Well, I think this panel is bound by Wythaka, which says that in the flow of commerce is the correct analysis under Section 1. We've reserved in our brief the argument that that's not right, but we understand that the panel is bound, and we think we win under a flow of commerce analysis. And I think the distinction that I'm talking about that shows the difference between this case and Wythaka is well illustrated by the Supreme Court's decision in Yellow Cab. There were two categories of local trips in that case. One like the work of rideshare drivers, and one like the work of the Amazon Flex drivers at issue in Wythaka. The work of the rideshare drivers is like the work of the cab drivers who simply pick people up and drop people off at Chicago railroad stations. There was no contractual or necessary relationship to the interstate rail trip, and it was also just one of many transport options for the passenger, and one that could be quite separate in time and continuity from an interstate trip. The work of the Amazon Flex drivers in Wythaka is like the work of the cab drivers in Yellow Cab who had a special contractual relationship with the railroads to take people between stations as a stage in their interstate journey. And those cab drivers, the Supreme Court said, were an integral step in a unitary interstate trip, just like the Amazon Flex drivers were an integral step in the unitary journey of Amazon goods from a warehouse in one state all the way to the customer's hands in another state. So we think that Yellow Cab, along with Knight and McCluskey, which is a FELA case like the cases this Court discussed in Wythaka and a number of other cases discussed in our briefs, dictate that rideshare drivers are not part of an integrated interstate trip and are therefore not engaged in interstate commerce within the meaning of Section 1. The second point with respect to Section 1 is that modern cases also support that line. We're not aware of any court, save the district court in this case, that has ever found rideshare drivers to be covered by Section 1. Many courts have said they are not and have said the same thing about limo drivers and shuttle drivers. And Inri Greis, a recent decision from the Ninth Circuit, albeit in a mandamus posture, accepted the exact line we're drawing here. Greis distinguished the Ninth Circuit's decision in Rittman, which was about Amazon Flex drivers, and followed the analysis of Wythaka very closely and said that a different Section 1 analysis applies to rideshare drivers and again pointed to Yellow Cab and said rideshare drivers are like those cab drivers in Yellow Cab and just pick people up and drop people off at railroad stations. And the third point I want to make about Section 1 is that this line is not only deeply grounded in precedent, but it is administrable and it makes sense. The district court's analysis here has no stopping point. Under that point of view about the flow of interstate commerce, all cab drivers, limo drivers, the crew on the water taxi, all shuttle drivers who go to the airport or the train station, the Silver Line bus drivers, other local bus drivers, the Blue Line train driver that goes to the airport station, the deliverer of lost luggage, all of those people would be in the flow of interstate commerce. And so too would the grocery delivery person who takes a can of soda that came from out of state and delivers it to someone two blocks away. I'm sorry, was I interrupting someone? Apologies. And so under that view, anyone with a peripheral or tangential relationship to a person or good that has moved or is going to move in interstate commerce would be in the flow of interstate commerce. And that would do a couple of things. It would make engaged in in Section 1 expand out towards involved in, which is the language in Section 2 and which we know from Circuit City and from this court's decision in Wythaka is much broader, whereas engaged in is narrower. And it would make Section 1 open a gaping hole in the FAA's coverage, even though, again, we know from those decisions that Section 1 is supposed to be narrow and precise and it's supposed to be limited to classes of workers similar to the railroad employees and seamen that are named in Section 1 who are especially important to keep interstate commerce flowing. Plaintiff's main response- How should we conceptualize or define here, from your view, the relevant class of workers? Is that Lyft drivers, rideshare drivers, rideshare drivers in Massachusetts? What is our class here? We think it's rideshare drivers in the United States, although we think the analysis would be exactly the same if the court looked to Lyft drivers in the United States. We understand plaintiffs in their brief to have accepted that that's the correct class to look at. And I think it's important that the class be nationwide and not regional because we're trying to analogize to the seamen and the railroad employees who are named earlier in Section 1 that the Supreme Court in Circuit City said those classes of workers define the classes of workers who are included within the residual exception. And those are nationwide classes of workers. And so there's no reason to think that there would be a regional class here. That would actually create all kinds of strange anomalies based on happenstances of geography. And so we think it's a national class. And again, I don't understand plaintiffs to be quibbling with that in any way. And when you look at rideshare drivers in the United States, they are not part of the flow of interstate commerce because they pick people up and drop people off at airports, which is the plaintiff's argument here, plaintiff's only argument here, and the basis for the district court's ruling. Plaintiff's response, I think, to all of this is not to quibble with the class, but to say, well, there is an integrated trip here because Lyft does marketing promotions with airlines. Lyft does marketing promotions with others too, with credit card companies, with T-Mobile. And the material that plaintiffs point to is outside the record. Some of it is inaccurate. It's newspaper articles, websites, but that was never presented to the district court. Plaintiffs never made this argument to the district court. And so we think this argument is waived and the court shouldn't consider it. But in any event, it's wrong. There is no package trip here based on the fact that there are these marketing promotions. So for instance, with respect to Delta, if you have a Delta SkyMiles account and a Lyft account, you can link them together. You can get Delta SkyMiles for rides you take using Lyft platform, including rides that don't involve an airport. But as I say, there's no package trip in that circumstance. If someone is flying Delta, they can choose their own local transport. They can choose to get a ride using Lyft platform or not. It's totally up to them. If they do choose a Lyft ride, that would be contracted for separately from their airplane ride. The miles that they might earn, the SkyMiles they might earn from taking a ride on the Lyft platform don't need to go to airline travel or to interstate airline travel. And they certainly don't need to go to a particular airline trip that's close in time to that rideshare ride. So there's just no integration between the local ride and any interstate flight. And so for all of those reasons, we think it's clear that Section 1 doesn't encompass rideshare drivers. And in fact, we think, as I say, a national consensus is developing that rideshare drivers are not within the scope of Section 1, whereas Amazon Flex drivers are within the scope of Section 1 as this court ruled in Wethaca. Plaintiffs have one other argument that they make that they say lets them out of the arbitration to which they freely agreed. And that is their public injunction argument. Even assuming Massachusetts might someday wholesale adopt California law on the subject of public injunctions, there's a very clear and straightforward way through this argument, which is that plaintiffs are not requesting public injunctive relief. A public injunction benefits the public directly, for instance, elimination of false advertising and the plaintiff as a member of the public. A private injunction gives relief to plaintiffs or class of plaintiffs and has perhaps an incidental public benefit. Plaintiffs here want money for themselves. And they say the public is going to benefit indirectly from that. Court after court after court, considering the same claims at issue here, rideshare drivers seeking sick leave or other state law employee payments have said that that is not a claim for a public injunction. We've cited those cases at page 22 of our Step 3 brief. These are California courts and federal courts in California. And so I think there are multiple flaws in plaintiff's public injunction argument. But again, I think this is a very clear, simple, straightforward way to dispose of it. Even if that rule existed in Massachusetts and there was no reason to think it would, this is not public injunctive relief that's being requested here in any way, shape or form. And so I'd also like to turn to the preliminary injunction motions if I could for a few minutes. Our first argument on the preliminary injunction motions is that the district court should never have ruled on the second motion for a preliminary injunction because this court had jurisdiction at that point in time. And that's the majority view of the courts of appeals. It preserves the arbitration right for a party that has bargained for arbitration. And we urge this court to adopt it. When the question before this court is whether a dispute belongs in court at all or whether it should always have been in arbitration, the district court shouldn't be permitted to carry on with its proceedings while an appeal is pending. That can be a way for a district court to express hostility to arbitration, which is what the FAA is intended to counter. So we think the district court's ruling on the second preliminary injunction motion should be vacated. But even setting that jurisdictional issue aside, I think there are numerous reasons why the denial of the preliminary injunction must be upheld. The district court found that plaintiffs had not established irreparable harm, which is the irreducible minimum of what a plaintiff must prove for extraordinary relief, which is what a preliminary injunction is, and especially a mandatory preliminary injunction like the one requested here. That district court determination isn't clearly erroneous or otherwise an abuse of discretion, especially because plaintiffs put almost no evidence into this record in support of their request for injunctive relief, whereas defendants put in a great deal of evidence that there was no irreparable harm here. And the conclusion that there's no irreparable harm here, I think, has only been cemented by the passage of time. These injunctions were denied almost a year ago now. Plaintiffs have not sought to expedite their appeals. They haven't sought any emergency relief from this court. And actually, if you look at the Massachusetts vaccine schedule, drivers who drive using the Uber and Lyft platforms are next up. They will be getting eligible for their vaccines within the next few weeks. And so although there certainly never was any irreparable harm here, there isn't any now. Finally, there's another procedural bar, one more procedural bar to the grant of the requested injunction, which is that the district court couldn't grant a class-wide preliminary injunction absent class certification. We think that rule is especially apt here because the majority of the putative class didn't want the requested relief. And in fact, we think would be harmed by the requested relief. So for all of those reasons, if the case has to be compelled to arbitration, the narrow section one exemption does not apply to rideshare drivers. They are not part of the flow of interstate commerce because they give rides to and from airports. And they're not part of an integrated interstate trip. Plaintiffs also aren't entitled to any preliminary injunction here. And plaintiffs can take their claims to individual arbitration. The arbitrator can decide if they're entitled to an injunction or any other relief. The court has no further questions. Wait for my rebuttal. We'll hear from your opponent now. You've reserved some time. Thank you, Your Honor. Thank you, Attorney Goldenberg. You can mute your audio and video at this time. And attorney Lissreardon, one moment, please. Judge McElroy, it's possible there's some feedback on your end. I don't know if the speaker is perhaps a little loud on your computer. Sometimes if you can and if you can't, we can work something else out. But I think so. It was just a touch and it just caused some feedback. So I'm sorry for interrupting, judges. I'm going to ask attorney Lissreardon  Yes, good morning, Your Honors. Shannon Lissreardon for the plaintiffs. Good morning. Good morning. I'm going to briefly address the arbitration issue. And then I do want to get to the denials of the motions for preliminary injunction. So first off, with respect to the Section 1 Transportation Worker Exemption, this court, of course, is bound by the Wathauka decision, which is on point directly here. That is controlling. It really, frankly, makes no sense why Amazon drivers really performing the same job as Lyft drivers, except that they transport goods, whereas Lyft drivers transport passengers. Why the Amazon drivers would be exempt under Section 1, but not Lyft drivers. The court below was correct that the passengers that Lyft drivers drive are in the flow of interstate commerce. When they are going to airports or bus stations or railroad stations, they are making interstate trips. And this is not just a happenstance that Lyft drivers are taking passengers to airports. Lyft is heavily involved in making sure that that's a major part of its business. 40% of rides at Logan Airport, 40% of the traffic are Lyft and Uber drivers. Lyft has been very involved in regulation with Massport regarding how Lyft drivers can pick up and drop off at the airport. Most Lyft drivers, even by Lyft's own admission, have taken passengers to the airport. And Lyft is partnering with airlines. Lyft is allowing drivers to book their trips 30 days in advance when they do it in connection with these interstate trips with major airlines. So this is not just happenstance. This is not just like an elevator operator who happens to let someone down an elevator who's on their way out to the airport. Lyft is very involved in these interstate trips. And this court in Wythaka made clear also that the company, that the employer, does not need to itself be involved in interstate commerce in order for the workers to be involved in interstate commerce. In other words, Amazon arranges for the interstate delivery in addition to the fact that the drivers are transporting these goods, but the court made clear that the company itself doesn't need to, this rule doesn't only apply to companies that are large enough that they themselves are engaged in interstate transport. Of course here, Lyft is a massive national company and it would be to try to limit, if you look at the lens factors, which the district court applied, a number of courts have looked to the lens factors in determining whether the section one exemption applies. If Lyft drivers across the country engaged in a strike, or if you talk about rideshare drivers, as my opponent just said, as the proper class, if Lyft and Uber drivers around the country engaged in a strike, which is one of the lens factors, that would have a massive impact on interstate commerce. The other side has posed a fair line drawing issue and argues that drawing a line between Amazon and here would be defensible, whereas if we include this on the other side of the line, where do we stop? What's your reaction to that for someone who operates the elevator on a hotel, local cabbies, the subway driver, where do we draw the line? Well, of course, courts always have to draw lines, but I don't see why there should be a line between Amazon drivers and Lyft drivers. So the elevator operator is easy. They're not transportation workers. If you look at the lens factors, they fail a number of those factors. With respect to blue line drivers or silver line shuttle bus drivers, that's not a major focus of what they're doing, whereas Lyft drivers, when 40% of the traffic at Logan is Uber and Lyft drivers and Lyft is actively involved in regulations with Massport regarding how those pickups and drop-offs occur, this is an easy part of... This is an easy question about which side of... Let me stay with that. Doesn't the person who operates the blue line take more people to the airport than your average Uber driver does or Lyft driver? Well, I don't know that, and perhaps the blue line is on the side. I don't know. That's not this case. So this court doesn't have to make the decision about where the line is drawn, but... Well, let's assume for a second that we are interested in where the line would be drawn. How about the people who shuttle you from the parking lots to Logan? Well, I think the people who shuttle you from the parking lots, they're pretty integrated with those interstate trips. I mean, transportation around the airlines is going to be very similar to what you saw in those pre-FAA cases, the FILA cases that this court looked at involving coal that was being moved, for example, intrastate that was being taken to where... Well, how about take the local delivery truck that delivers Poland spring water to restaurants in Boston, drives all over Boston all day long, picks up the stuff after it comes down from Maine? Well, I mean, I think under Rittman, I'm sorry, Rittman and Wythaka, yes. I think those would be section one. Those would be covered by section one. Even though it's a different company, even if it's a different company? Yes, because this court said in Wythaka that it doesn't matter if it's the same company or a different company. And then also I think the harder cases are the cab cases. So if I could just talk about those for a second. The yellow cab case, of course, was decided in 1946, which was decades after the FAA was passed. So this court in Wythaka said that the court needs to look at the cases that were pre-FAA. But even in the yellow cab case, there were two types of trips. And the court held that the type of trip for which there was some prearrangement made, taking the railroad passengers from one station to another station so they could be part of their interstate trip, that was interstate commerce. It was when the passenger was off into the street and figured out how to get home. Those rides were not interstate commerce. But given here that Lyft is actively involved with the airline in coordinating the continuation of the passenger's trip, this would fall into the category of yellow cab that recognized there was interstate commerce. And also the Knight case, which was pre-FAA, which Lyft cites. That case was cited in the Rittman case, which followed Wythaka, which held that intrastate journeys could be part of interstate journeys. So I think if you look at all of those cases, it just makes no sense why Amazon drivers and Lyft drivers would be treated differently. I'd like to move on because there's so much to cover here, unless your honors have more questions on that. I will also point out, though, that as we noted, Lyft recognizes that 2% of the trips nationwide that Lyft drivers take do cross state lines. And the Seventh Circuit has found in a couple of cases, the Teamsters case, the Conestria case, that even occasional trips across state lines are sufficient to bring workers within the Section 1 exemption, even less than 2% in those cases. In addition to the Section 1 exemption, of course, we have the argument about the public injunctive relief. So we have urged this court, like we did the court below, to either rule that Massachusetts law would follow California law in not allowing a company to use an arbitration clause to block... Ms. Liss-Riordan, let's back up. There was a denial of preliminary injunctive relief, which we review for abuse of discretion. So I don't see any errors of law being alleged. You're saying, well, the Massachusetts courts should adopt, but they have not yet adopted any California rule. So is there some other error of law? And then secondly, what's the abuse of discretion? Okay, yes, Your Honors. So what you just asked raises two issues, which the district court really conflated. One question, the public injunctive relief question is a defense to arbitration. That's separate from our request for a preliminary injunction. So on the question about public injunctive relief as a reason why the arbitration clause can't be enforced, the Massachusetts courts have an opined on it because the SJC hasn't been asked to. In California, that rule, that public injunction... Five minutes. I'm sorry, but how is that a clear error of law? That's a legal issue. Okay, do you have any other argument? Yes, Your Honor. So I would say that, again, the California Supreme Court said in McGill that public injunctions can't be thwarted through arbitration. The California courts didn't know that was the case until it went to the Supreme Court. So I would urge this court to... Do you have another argument than this one, which you continue to repeat, although I have asked you to move on? Yes. Okay, so moving now to the denial of the request for the preliminary injunction. So we have two requests that were at issue here. The first request had to do with the fact that Lyft has completely avoided following any Massachusetts wage law based on its misclassification of its drivers. And the legal error that the court made there was only one of the four prongs that the court addressed was the irreparable injury. In the second denial of our motion for preliminary injunction, which was based on the lack of sick pay during the coronavirus pandemic, the court did address the other three and said that we met all three of the other provisions, likelihood of success, balance of harms in the public interest. But again, the court held that there was no showing of irreparable harm. So in both preliminary injunction requests, the court erred as a legal matter in finding no irreparable harm. And if I can just talk about that for a moment. First of all, there's a sliding scale. The more you satisfy the other factors, the less irreparable harm you need to show. And as the court held the second time, we met the other three factors. But with respect to the irreparable harm, we showed both times harm both to the drivers themselves as well as harm to the public. Now, if you look at page 30 of our brief, there are a number of courts around the country that have recognized that harm to the public can be considered as part of harm to the plaintiffs. Here, they're intertwined. Now, in our first motion for preliminary injunction, the harm to the drivers, it was self-evident. This company has deprived the drivers of all wage protections, which had been well-established by the legislature and the courts to be so important to the well-being of drivers who aren't even getting minimum wage. Now, in our second request, after the pandemic began, the harm to the drivers is also apparent. And we backed it up with affidavits submitted from drivers who believed they may have contracted the virus while working for Lyft. Now, of course, the Massachusetts sick time law allows you to use sick time for preventative care. So had Lyft allowed drivers to earn sick time that they should have been allowed under the law, that would have allowed thousands of more people to stay home for preventative care in order to prevent themselves from contracting the virus. And the Massachusetts Attorney General's office has declared that preventative care includes staying home to protect yourself from COVID-19. Now, the harm to the public, the first time and the second time around, first of all, the harm that we cited to the public and Lyft depriving all of its drivers of all wage protections is clear from the SJC's decisions in summers, recognizing how important it is that misclassification laws be enforced and how not doing so harms the public. It harms the public coffers. It harms complying competitors. And the second time around, I think the harm to the public is even more acute and clear that Lyft's failure to provide paid sick leave to its drivers, which led many drivers, thousands of drivers, perhaps, to continue driving while sick, obviously led to harm to the public because it exposed more of the public to this deadly virus. Now, the reason that the court denied our motions for preliminary injunctions because she was confused that what we were asking for was a public injunction, which she said that the SJC hasn't recognized, but that's a separate question. That was simply a defense to Lyft's motion to compel arbitration. We don't need to have, Massachusetts law doesn't have to allow for a public injunction in order for us to have established these harms, which I just spelled out. Massachusetts general law, chapter 149, section 150, allows for an injunction for the violation of the wage laws. It doesn't need to be a public injunction. So the court simply got confused thinking we needed to be able to show a public injunction. But in any event, the attorney general's office submitted an amicus brief and our support- Yes, in the district court, but not in our court. Well, it's- and I apologize. I just realized this morning, it was inadvertently left out of the- we had prepared it to be included in our addendum. I don't know why it got left out. I would ask to be able to supplement- No, no, no, no. You're missing the point. It may have been submitted to the district court. No such brief was submitted to us. Well, they didn't repeat by submitting it here because it was presumably in the record. And I think the fact that the attorney- Okay, move on. Time has expired, judge. Okay. Do you have a final sentence, one sentence you'd like to leave with us? Yes. Although the Supreme Court has over the last decade endorsed the use of arbitration clauses over and over again, it has never been faced with a situation like this where a company uses an arbitration clause to block the enforcement of wage laws altogether and continually just avoid having any court rule on the fact that it has avoided all wage laws altogether. And I don't believe Massachusetts law would allow a company to do that. Thank you very much. Let me ask a quick question about that. There's like 50,000 people in the class in Massachusetts or something like that. There's a large number. Why couldn't several thousand of them, perhaps at your behest, just file arbitration demands? And an arbitrator, if you've got a fair arbitrator, might well rule their way. In fact, it may turn out that Lyft doesn't like arbitration if you've got 10,000 Lyft drivers filing demands. Your Honor, I've been doing that. And that may allow for a monetary relief for those people who happen to sign up, but it is never going to require the company to comply with the wage laws across its entire workforce. It's just in an unprecedented way, just avoiding ever having a court rule on the legality of its practices, which have been in place- Okay, thank you. Thank you. At this time, Attorney Lyfts Reardon, you should mute your audio and video. And Attorney Goldenberg, you should reintroduce yourself on the record and proceed. Thank you. Elaine Goldenberg on behalf of the Lyft defendants. The plaintiffs here agreed to arbitration. They could have opted out of the arbitration clause if they wanted to. They didn't do so. And under the FAA, they should be bound to that arbitration. There is nothing unfair about the arbitration. An arbitrator can award injunctive relief or any relief a court could award. With respect to section one, I've heard plaintiffs for the first time make this argument about 2% of rides crossing state lines. That argument is waived. It was adverted to briefly, only in a footnote in their briefs. In any event, that's not nearly enough to show that the class of rideshare drivers is engaged in interstate commerce. And I point this court to the Seventh Circuit's decision in Wallace, which says that you need to look at what the central part of the worker's job description. And 2% of rides is not a central part of anybody's job description. Could you go back? Ms. Liz Riordan suggested that the line you drew between Waythaka and here is not quite so clear because in Waythaka, you have independent contractors who aren't Amazon employees, who have some service kind of like the Lyft drivers do. I mean, I envision a driver who's signed up with both Lyft and Amazon sitting in his car. And one moment he gets a thing to pick up a package that's come in through Logan. The next moment he gets a thing to pick up a passenger who's come in through Logan. What exactly is the distinction that you would have us rest on in that scenario? The distinction is whether there's a contractual or necessary relationship to the interstate trip. And in the Amazon situation, the worker is part of a series of links in a chain of interstate commerce where the good is going from one place to the other. And Amazon, which is coordinating Amazon logistics, which is coordinating the travel of the good, is coordinating that whole trip, including by contracting with the Amazon Flex driver. So there's a contractual relationship. In the ride share driver situation, there is no such contractual relationship to any interstate trip because it's just a passenger deciding of their own volition, this is the kind of local transport I'd like to take today when I go to and from the airport. And there's no relationship between that ride and any interstate airline trip. There's no coordination between Lyft and the airlines on that. There's no coordination between anyone who's moving the passenger. What if the passenger is viewed as in the position of Amazon? The passenger is preparing an interstate trip. And like Amazon, it then needs to find people to assist with the interstate trip and it gets a Lyft driver to do it. I don't think you can view the passenger or good itself as being in the coordinator position here for purposes of deciding whether there's a coordinated trip. Of course, a passenger of their own volition could always stack together a bunch of local journeys, but it can't be that the people who are carrying out those local journeys are somehow all unbeknownst to them in the flow of interstate commerce. And you see that from the night case and the yellow cab case where you have passengers of their own volition deciding here's the local transport I want to take. In the night case, it was actually the same company that ran the local cab service in New York and the interstate ferry. And there, the court said, there is no integrated interstate trip. There is not engagement in interstate commerce because there is a separation caused by the fact that there's no contractual or necessary relationship and because of the passenger's own volition. If I could, Your Honor, I'd like to say one sentence about the preliminary injunction issues. Sure. Thank you very much. With respect to those, there's no confusion on the part of the district court. The district court found as fact that there was no irreparable harm, that there was no showing of economic precarity, that there was no showing of irreparable harm with respect to sick leave. Those are findings. They are not clearly erroneous, and there is no abuse of discretion with respect to them. There's just no basis for overturning the preliminary injunction ruling under the abuse of discretion standard of review in this court. Thank you very much. Thank you. Thank you. That concludes argument in this case. Attorney Goldenberg, you may disconnect from the hearing at this time. Attorney Lisseridden should remain in the meeting.